## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AZUMA CORPORATION**, a tribally-chartered corporation wholly owned by the Alturas Indian Rancheria, a federally recognized Indian tribe, P.O. Box 340 Alturas, California 96101 | |
| *Plaintiffs.* | |
| v. | Civil Action No. 19-2209 |
| **UNITED STATES DEPARTMENT OF THE TREASURY ALCOHOL AND TOBACCO AND TAX TRADE BUREAU**, 1310 G Street, N.W. Box 12 Washington, DC 20005 | |
| **MARY G. RYAN**, TTB Acting Administrator, in her official capacity, 1310 G Street, N.W. Box 12 Washington, DC 20005; | |
| **NICHOLAS COLUCCI**, Assistant Administrator (Field Operations), in his official capacity, 1310 G Street, N.W. Box 12 Washington, DC 20005; | |
| **RONALD N. HANCOCK**, TTB Deputy Assistant Administrator (Field Operations), in his official capacity, 1310 G Street, N.W. Box 12 Washington, DC 20005; | |
| *Defendants.* | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## I.   INTRODUCTION

1.      This is a civil action against the United States Department of the Treasury Alcohol and Tobacco Tax and Trade Bureau ("TTB") under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, and §§ 701, *et seq.*, seeking declaratory, injunctive, and related relief declaring that a settlement agreement entered into between the Parties related to an ongoing order to show cause proceeding is valid and binding.

2.      On May 11, 2018, TTB's Acting Assistant Administrator, Field Operations extended to Azuma a written settlement proposal pursuant to the authority of the TTB's Acting Assistant Administrator, Field Operations and pursuant to Rule 403 of the Federal Rules of Evidence.  On May 25, 2018, Azuma accepted TTB's offer by letter.  Immediately upon its formation, the Parties began performing under the settlement agreement.

3.      However, on August 14, 2018, TTB's attorney informed counsel for Azuma that TTB was changing course and disavowed the Settlement Agreement, specifically asserting that a settlement agreement did not exist.

4.      Azuma now seeks a declaration that a valid and binding settlement agreement exists between the Parties and an order enforcing the Settlement Agreement.

## II.   JURISDICTION AND VENUE

5.      This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the Constitution and laws of the United States, including the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* and §§ 701 *et seq.*; 28 U.S.C. §§ 2201 and 2202 (declaratory judgments); and Department of the Treasury regulations, 27 C.F.R. Part 71.

**COMPLAINT**
*AZUMA CORP. V. U.S. DEP'T OF THE TREASURY ALCOHOL AND TOBACCO AND TRADE BUREAU*

6.      This court also has jurisdiction pursuant to 28 U.S.C. § 1346(a)(2), in that this is a civil action against the United States, not exceeding $10,000 in amount, founded upon the Constitution, Acts of Congress and regulations of an executive department, including but not necessarily limited to the provisions previously described.

7.      This court also has jurisdiction pursuant to 28 U.S.C. § 1361, in that this is a civil action in the nature of mandamus seeking to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the Plaintiff, which duty arises under the Constitution and laws of the United States, including but not necessarily limited to the provisions previously described.

8.      The sovereign immunity of the United States has been waived with respect to the subject matter of this action and the relief requested herein by the APA, 5 U.S.C. § 702.

9.      Venue in this action lies in this Court pursuant to 28 U.S.C. § 1391(b)(1), § 1391(b)(2), § 1391(e)(1)(A), and § 1392(e)(1)(B), in that this is a civil action against an officer or employee of the United States or any agent thereof acting in his or her official capacity or under color of legal authority, or an agency of the United States or the United States, and a substantial part of the events or omissions giving rise to the claim occurred within the Northern District of California, and one or more defendants resides within the Northern District of California.

## III.    THE PARTIES

10.     Azuma Corporation is a tribally-chartered corporation wholly-owned by the Alturas Indian Rancheria ("the Tribe"), a federally-recognized Indian tribe.  Azuma is located on the Tribe's Rancheria lands, which are located within the exterior boundaries of the State of California.

11.      Defendant United States Department of the Treasury Alcohol and Tobacco Tax and Trade Bureau is a bureau of the United States Department of the Treasury, headquartered at 1310

G Street, NW, Washington DC 20005, which regulates and collects taxes on trade and imports of alcohol, tobacco, and firearms within the United States.

12.     Defendant Mary G. Ryan is the Acting Administrator of the Alcohol and Tobacco Tax and Trade Bureau (TTB) and is sued here in her official capacity.  Acting Administrator Ryan took office on sometime after the May 25, 2019 passing of the former Administrator.  As the context may require, all references herein to the Acting Administrator prior to May 25, 2019 refer to Acting Administrator Ryan's predecessors in office, in their official capacities.

13.     Defendant Nicholas Colucci is the TTB's Assistant Administrator (Field Operations) and is sued here in his official capacity.  Assistant Administrator Colucci took office in or around February 2019.  As the context may require, all references herein to the Assistant Administrator (Field Operations) prior to that date refer to Assistant Administrator Colucci's predecessors in office, in their official capacities.

14.     Defendant Ronald N. Hancock is the TTB's Deputy Assistant Administrator (Field Operations) and is sued here in his official capacity.  Deputy Administrator Hancock took office in or around February 2019 and, prior to that time was Acting Assistant Administrator (Field Operations).   As the context may require, all references herein to the Deputy Assistant Administrator (Field Operations) prior to that date refer to Deputy Assistant Administrator Hancock's predecessors in office, in their official capacities.

## IV.     GENERAL ALLEGATIONS

### A.  The Order to Show Cause Proceedings

15.     On May 29, 2008, the TTB approved Azuma's Manufacture of Tobacco Products (MTP) permit number TP-CA-15012 issued pursuant to 26 U.S.C. Chapter 52. Azuma's permit authorizes it to engage in business as a manufacturer of tobacco products.

**COMPLAINT**
*AZUMA CORP. v. U.S. DEP'T OF THE TREASURY ALCOHOL AND TOBACCO AND TRADE BUREAU*

16.     On or around September 11, 2017, after an investigation into alleged violations by Azuma of the conditions of its MTP permit, TTB made the decision to seek revocation of Azuma's permit.  At the same time, TTB determined that it would not seek an informal resolution with Azuma regarding its MTP permit and alleged violations.

17.     On or around December 13, 2017, the TTB issued an Order to Show Cause as to why Azuma's Manufacturer of Tobacco Products Permit should not be revoked.  In its OTSC, the TTB alleged that Azuma violated the conditions of its permit by failing to comply with Chapter 52, Title 26 of the United States Code and its attendant regulations.

18.     The TTB provided a copy of the OTSC to Azuma's counsel by email on December 18, 2017.

19.     Azuma, through counsel, timely requested a hearing by letter dated December 28, 2017. The TTB subsequently referred the matter to Administrative Law Judge Christine Donelian Coughlin[1] by letter dated February 16, 2018.

20.     On April 6, 2018, Azuma filed an Answer to the OTSC, which contained several affirmative defenses.

21.     Throughout the OTSC proceedings, Azuma has contended that the proceedings should be dismissed on both procedural and substantive bases.

///

///

///

---

[1] ALJ Coughlin is an Administrative Law Judge for the United States Environmental Protection Agency.  Because the TTB does not have its own Administrative Law Judge, ALJ Coughlin was designated to preside over the OTSC proceedings pursuant to an Interagency Agreement effective for a period beginning March 21, 2017.

**COMPLAINT**
*AZUMA CORP. v. U.S. DEP'T OF THE TREASURY ALCOHOL AND TOBACCO AND TRADE BUREAU*

**B.  Offer and Acceptance of the Settlement Agreement**

22.     On March 6, 2018, the Honorable Susan L. Biro, Chief Administrative Law Judge,[2] wrote to TTB Attorney Daniel Peralta and counsel for Azuma, inviting the Parties to participate in an Alternative Dispute Resolution process to reach a settlement of the revocation proceedings.

23.     On March 15, 2018, Azuma's attorney accepted the invitation to participate in mediation for settlement.

24.     On March 19, 2018, TTB Attorney Peralta informed Azuma's attorney and ALJ Attorney-Advisor Jennifer Almase that TTB did not wish to participate in mediation for settlement and requested a hearing and decision on the OTSC.

25.     However, TTB's regulations required it to consider a settlement.  In "all proceedings in which a permittee is cited to show cause why the permit should not be suspended, revoked or annulled, the permittee shall be afforded an opportunity for the submission and consideration of facts, arguments, offers of settlement, or proposals of adjustment, where time, the nature of the proceeding, and the public interest permit."  27 C.F.R. § 71.36.  The regulation further provides, "[i]f proposals of settlement are submitted, and they are considered unsatisfactory, the appropriate TTB officer may reject the proposals and may, either directly or through the attorney for the Government, inform the permittee of any conditions on which the alleged violations may be settled."  *Id*.  "If the proposals of settlement are considered satisfactory to the appropriate TTB officer, the permittee shall be notified thereof *and the proceeding shall be dismissed*, unless such proposals of settlement include a [satisfactory] monetary offer in compromise."  *Id*. (emphasis added).  In the event the settlement offer contains a satisfactory monetary offer of compromise,

---

[2] The Honorable Susan L. Biro is the Chief Administrative Law Judge of the Environmental Protection Agency.

**COMPLAINT**
*AZUMA CORP. V. U.S. DEP'T OF THE TREASURY ALCOHOL AND TOBACCO AND TRADE BUREAU*

"the proceeding shall be held in abeyance pending final action on such monetary offer in compromise." *Id.*

26.     On March 29, 2018, ALJ Coughlin issued a Prehearing Order ("March 29, 2018 Prehearing Order"), which directed the parties to engage in a settlement conference on or before April 13, 2018 to attempt to reach an amicable resolution of the OTSC matter.  The March 29, 2018 Prehearing Order also required the TTB to file a Status Report regarding this conference and the status of settlement on or before April 20, 2018.  The March 29, 2018 Prehearing Order further ordered the parties to engage in a process of exchanging information in anticipation of a hearing and set forth a schedule for several prehearing exchanges.

27.     On April 10, 2018, the parties participated in a telephonic settlement conference, and as reported in TTB's April 20, 2018 status report, no settlement was reached, although "settlement discussions between the Parties remain[ed] ongoing."  As part of those ongoing discussions, the parties agreed that Azuma would submit to TTB a "settlement response," as contemplated by 27 C.F.R. § 71.36, regarding concerns raised by the OTSC.

28.     On May 4, 2018, Azuma submitted its Section 71.36 settlement submittal to TTB, in which it presented facts, arguments, and a proposal to resolve the matter without moving forward with the formal OTSC proceedings.

29.     On May 11, 2018, after reviewing Azuma's May 4, 2018 settlement submittal, Defendant Hancock, then TTB's Acting Assistant Administrator, Field Operations, extended to Azuma, through TTB attorney Daniel Peralta, "the following settlement proposal in lieu of a revocation action" pursuant to the authority of the TTB's Acting Assistant Administrator, Field Operations.  *See* Email, Daniel Peralta to John Peebles, In re Azuma Corporation – AF – 97,221-AAREV (May 11, 2018) (a true and complete copy is attached hereto as Plaintiff's **Exhibit 1**).

TTB Attorney Peralta's email stated that the settlement offer was made pursuant to Rule 403 of the Federal Rules of Evidence.  The TTB's settlement offer included terms upon which the alleged violations would be settled "in lieu of the permit revocation action."

30.      The TTB's May 11, 2018 email also indicated the settlement offer was open until June 1, 2018.

31.      On May 22, 2018, the parties discussed TTB's offer on a teleconference, in which the parties mutually assented to the material terms of the TTB's settlement offer.

32.      On May 25, 2018, Azuma formally accepted the agency's offer in an email transmittal of a letter stating, Azuma "accepts the settlement offer made" by the TTB.  *See* Letter, John Peebles to Caroline F. May, Office of Chief Counsel, Alcohol and Tobacco Tax and Trade Bureau, In re: Azuma Corporation, Case No. AF-97,221-AAREV (May 25, 2018) (a true and complete copy is attached hereto, without exhibits, as Plaintiff's **Exhibit 2**).  Azuma's acceptance letter listed out and accepted the material terms outlined in the TTB's May 11, 2018, settlement offer and discussed on the May 22, 2018 telephone conference.

33.      TTB's May 11, 2018 email expressed that TTB's settlement offer was "in lieu of a revocation action."  As such, Azuma's agreement to the offer was in exchange for TTB dismissing the Order to Show Cause.

34.      After Azuma's acceptance of the TTB's settlement offer, the Parties began performing under the terms of the Settlement Agreement.  In addition, the Parties jointly sought and obtained the ALJ's stay of the Order to Show Cause proceedings.

35.      By order issued on May 25, 2018, the ALJ granted the Parties a stay of proceedings until June 25, 2018.  Orders issued on June 28, 2018, and August 2, 2018, subsequently extended

that stay upon the request of the Parties. The order dated August 2, 2018 directed the Parties to file a jointly executed status report on August 15, 2018, identifying the status of settlement.

36. By the time the Parties circulated a draft memorialization of the Settlement Agreement on July 16, 2018, Azuma was performing under the Agreement, and all material terms of the May 11, 2018 offer and the May 25, 2018 acceptance were already being resolved.

37. In addition, the Parties scheduled a TTB inspection visit to the facility, which was a material term of the Settlement Agreement. The TTB inspection took place on August 7, 2018. In this way, TTB also was performing under the Settlement Agreement.

38. During that same time-period, Azuma—acting in good faith and in reliance on the Settlement Agreement—provided information beyond that required by the terms of the Settlement Agreement.

39. With its acceptance of the TTB's offer, Azuma expended substantial resources and underwent substantial effort in performance of, and in reliance on, the Settlement Agreement.

40. For example, the Settlement Agreement required Azuma to begin manufacturing cigarettes by a certain date, which was to be determined. In order to meet this settlement requirement, almost immediately Azuma began preparing its machines for operation. In June of 2018—within one month of the Settlement Agreement—Azuma contracted with and flew out Larry Prince, an expert machinist specializing in tobacco manufacturing machines, to assemble and calibrate its machines. Azuma has had to order several replacement parts to make the machines operational, some from as far away as Germany. For this reason, Mr. Prince has flown from Virginia to Alturas, California as many as eight times to repair and calibrate the machines in order to make them operational and in full compliance with the law and regulation.

41.     In addition to constructing and calibrating its machines, Azuma, after many months of negotiations and due diligence, finalized the purchase a collection of approximately fifty cigarette brand-styles from Westgate Distribution.  For each, Azuma immediately informed the United States Food and Drug Administration (FDA) of the change of ownership and, where appropriate, contacted the FDA to withdraw substantial equivalence reports.  Furthermore, Azuma renewed the trademarks acquired from Westgate Distribution and overcame a preliminary refusal to register for its TRACKER® brand line of tobacco products.

42.     Pursuant to the material terms of the Settlement Agreement, two TTB investigators conducted an inspection of Azuma's facility pursuant to the Settlement Agreement on August 7, 2018, as discussed above.  The purpose of the August 7, 2018 inspection, according to the material terms of the Settlement Agreement, was "to verify that the premises have been adequated exclusively for the manufacture of tobacco products."  During the investigation, the TTB investigators verified that Azuma's premises were adequated exclusively for the manufacture of tobacco products, as contemplated by the Settlement Agreement.

43.     At the end of the inspection, the TTB investigators provided Azuma with an agreement and acknowledgement of laws and regulations form, which Azuma signed and returned to the TTB. This acknowledgement of laws and regulations form also was contemplated by the Settlement Agreement, which required Azuma to "affirmatively state that it is aware that its permit is conditioned on compliance with the applicable provision of 26 U.S.C. Chapter 52, the Federal Water Pollution Control Act, and all applicable regulations made pursuant to law which now or may hereafter be, in force and until suspended, revoked, automatic [sic] terminated, or voluntarily surrendered, as provided by law and regulations."

**COMPLAINT**
*AZUMA CORP. V. U.S. DEP'T OF THE TREASURY ALCOHOL AND TOBACCO AND TRADE BUREAU*

44.    In addition to fulfilling two of the Settlement Agreement's material terms, one investigator, Aniko Ritchie, created a hand-written action item list of outstanding matters that Azuma should address while moving forward with its operations as contemplated by the Settlement Agreement.  The handwritten action items list was generated from discussions between the TTB investigators and Azuma officials during the August 7, 2018 inspection, and TTB investigator Ritchie provided a copy to Azuma officials at the end of the inspection.

45.    The first handwritten action item was to provide a power of attorney for a particular Azuma employee, Shawn Normington, which Azuma officials emailed to TTB investigator Ritchie during the inspection.  For this reason, the handwritten action item list reflects a check mark on that action item, indicating that it was completed during the August 7, 2018 inspection.

46.    Late in the evening of August 7, 2018, TTB investigator Ritchie responded to Azuma's email transmitting the power of attorney for Shawn Normington.  In the email response, TTB investigator Ritchie included a "revised Action item list," which clarified and expanded upon the hand-written list.  The "revised action item list" contained eleven action items for Azuma to address, including putting a signed power of attorney for Azuma employee Shawn Normington in the TTB file, which had already been completed.

47.    Some of the action items were steps that Azuma would need to complete if it wanted to expand its operation into one or more additional buildings.  In order to expand its operation, the action items list directed Azuma to submit an application for an amended MTP permit and related information, add the additional buildings to the existing premise, and update TTB with the amended permit application materials.

48.    Other action items were aimed at modifying Azuma's practice to address concerns expressed by the TTB investigators.  For example, one action item requested that Azuma ensure

**COMMITTEE**
*COMPLAINT*
*AZUMA CORP. V. U.S. DEP'T OF THE TREASURY ALCOHOL AND TOBACCO AND TRADE BUREAU*

that bond-to-bond transfers of cigarettes are off-loaded onto the bonded premise, such that the "product touches [the] bonded premise," and that Azuma's bills of lading clearly reflect the complete off-loading. This action item is also checked off on the handwritten list, reflecting that the item was addressed during the August 7, 2018 inspection. Another item directed Azuma to correct any inaccurate information on prior bills of lading and ensure that future bills of lading were accurate.

49.     Still other action items were aimed at acquiring TTB approval for some of Azuma's preferred practices. For example, the revised action item list directs Azuma to submit a variance for Azuma to keep its records in an alternate location.

50.     Finally, the revised action items list directed Azuma to send certain information to TTB investigator Ritchie. This requested information included the results of a future meeting and a proposed business model regarding Azuma's contemplated operations.

51.     Azuma began addressing and resolving each of the items on the "revised Action item list" during the August 7, 2018 inspection. After the inspection, Azuma continued addressing each of the items on TTB investigator Ritchie's action item lists. For example, seeking to expand its operations, Azuma submitted an application for an amended MTP permit and the associated documentation. Azuma also made all adjustments to its practices to meet the directions of the action items lists and sent the information requested by the TTB investigator.

**C.  TTB's Disavowal of and Azuma's Attempts to Enforce the Settlement Agreement**

52.     On August 14, 2018, TTB's attorney telephoned counsel for Azuma and informed him that TTB was changing course and would no longer comply with the Settlement Agreement, in particular, TTB's obligation to withdraw the OTSC.

53.     During the August 14, 2018 phone call and in a subsequent exchange of emails between TTB and Azuma's counsel, Azuma sought to identify a specific factual basis for TTB's change of course but was not advised of any such basis.

54.     In the August 14, 2018 email exchange, Azuma's counsel asserted that Azuma intended to enforce the Settlement Agreement.   In response, TTB's counsel asserted "a settlement agreement was proposed but never finalized.  As such, there is nothing for Azuma to enforce."

55.     No administrative remedies were provided for the disavowal of the Settlement Agreement.  Nonetheless, Azuma's counsel requested a telephone conference with the Deputy Assistant Administrator (Field Operations) to review TTB's decision, TTB's counsel responded by email, "TTB's Deputy Assistant Administrator (Field Operations) does not believe that a call would serve any purpose at this time and has advised that TTB will move forward with revocation proceedings."

56.     On August 15, 2018, TTB filed a status report with the ALJ, asserting "no settlement was ultimately reached."

57.     Also on August 15, 2018, Azuma filed a status report with the ALJ, asserting that "[t]he offer of settlement was accepted by Azuma Corporation on May 25, 2018.  Thereafter, on August 14, 2018, counsel for TTB advised counsel for Azuma that TTB was withdrawing from the settlement agreement."

58.     Despite the TTB's changed position, Azuma has continued performing under the Settlement Agreement, to the extent possible given TTB's reticence.

59.     With no administrative remedies provided to address the TTB's disavowal of the Settlement Agreement, Azuma filed a Motion to Enforce the Parties' Settlement Agreement and Dismiss Order to Show Cause Proceedings before the ALJ on November 2, 2018.  In that motion,

Azuma asserted that a settlement agreement was reached and urged the ALJ to enforce that agreement and dismiss the OTSC proceedings.

60.     The TTB filed a brief in opposition to the motion on November 13, 2018, denying that it had entered a settlement agreement with Azuma.

61.     The ALJ found it could not provide an administrative remedy.  Specifically, the ALJ stated that, regardless of whether the negotiations resulted in a binding contract, the ALJ is not authorized to enforce any settlement even if one was reached.  The ALJ found that 27 C.F.R. § 71.36 makes no mention of the involvement of an Administrative Law Judge in the settlement process and that the enforcement of settlement agreements is not one of the responsibilities of Administrative Law Judges, who are generally charged with overseeing "the conduct of hearings" and rendering a decision.

62.     By contrast, the ALJ found that it is the federal district courts who have the inherent authority to enforce settlement agreements in agency proceedings.  On that basis, the ALJ's inability to enforce the settlement agreement, the ALJ made no findings with respect to whether the parties did in fact consummate a binding settlement under general contract principles. Therefore, the ALJ denied Azuma's motion.

63.     Thereafter, on consideration of the scope of discovery the ALJ would allow, Azuma argued that the ALJ should allow discovery regarding the Settlement Agreement, including its formation and the TTB's disavowal of the Agreement.  TTB objected to any discovery related to the Settlement Agreement on the basis that the ALJ had decided the issue and it could not be relitigated in the administrative hearing.  On June 4, 2019, the ALJ issued an order on the scope of discovery.  In that order, she denied discovery related to the Settlement Agreement, stating: "I

have already considered and ruled on those issues, and I will not entertain further argument about them or otherwise permit their re litigation before this Tribunal."

64.     Thus, Azuma brings this Complaint in federal court.

## V.     CAUSES OF ACTION

## FIRST CAUSE OF ACTION

(APA Violation – Review of Final Agency Action)

65.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 64 of this Complaint.

66.     TTB's disavowal of the Settlement Agreement and failure and refusal to abide by the Settlement Agreement is a final agency action for which there is no other adequate remedy in a court, reviewable in accordance with 5 U.S.C. §§ 704 and 706, and Plaintiff has exhausted all available administrative remedies.

67.     Mandated by its own regulations, TTB issued a settlement offer, which Azuma accepted.

68.     There is a binding and enforceable Settlement Agreement between the Parties.

69.     TTB has a mandatory, non-discretionary duty to abide by the Settlement Agreement.

70.     TTB's disavowal of the Settlement Agreement and failure and refusal to abide by the Settlement Agreement is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

71.     TTB's disavowal of the Settlement Agreement and failure and refusal to abide by the Settlement Agreement is in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights.

72.     TTB's disavowal of the Settlement Agreement and failure and refusal to abide by the Settlement Agreement has caused, and is causing, Azuma ongoing and substantial harm.

### SECOND CAUSE OF ACTION

(APA Violation – Review of Final Agency Action)

73.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 72 of this Complaint.

74.     TTB's decision not to comply with the Settlement Agreement and dismiss the OTSC proceedings is a final agency action for which there is no other adequate remedy in a court, reviewable in accordance with 5 U.S.C. §§ 704 and 706, and Plaintiff has exhausted all available administrative remedies.

75.     Pursuant to TTB regulations, if a settlement proposal is considered satisfactory to the appropriate TTB officer, an OTSC proceeding must be dismissed.

76.     On May 11, 2018, Ronald N. Hancock – TTB's then-Acting Assistant Administrator, Field Operations and current Deputy Assistant Administrator, Field Operations – extended to Azuma, through TTB Attorney Daniel Peralta, "the following settlement proposal in lieu of a revocation action."  TTB Attorney Peralta's email stated that the settlement offer was made pursuant to Rule 403 of the Federal Rules of Evidence.  TTB's May 11, 2018 email indicated the settlement offer was open until June 1, 2018.

77.     On May 25, 2018, Azuma formally accepted TTB's offer in an email transmittal of a letter, stating Azuma "accepts the settlement offer made" by the TTB.

78.     Because the TTB itself provided the proposal of settlement, it necessarily considered the terms of the Settlement Agreement satisfactory.

79.     TTB's decision not to comply with the Settlement Agreement and dismiss the OTSC proceedings is an agency action unlawfully withheld or reasonably delayed.

80.     TTB's disavowal of the Settlement Agreement and failure and refusal to abide by the Settlement Agreement has caused, and is causing, Azuma ongoing and substantial harm.

## THIRD CAUSE OF ACTION

(Declaratory Relief)

81.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 80 of this Complaint.

82.     In the exchange of e-mail correspondence on May 11, 2018 and May 25, 2018, TTB offered, and Azuma agreed, to material terms of a complete settlement of all counts raised in the OTSC.

83.     The TTB's email dated May 11, 2018 explicitly stated that it constituted a "settlement offer" and a "settlement proposal."  The TTB's May 11 email expressly held the offer open until June 1, 2018, after which the offer would be withdrawn.

84.     On May 25, 2018, Azuma accepted the TTB's offer in writing and began performance under the agreement.  After receiving Azuma's acceptance letter, TTB did not assert that Azuma had misunderstood or misstated the fact that a settlement offer was made and accepted.

85.     The valid offer and acceptance on their face show the Parties' intent to be bound and constitute a valid and binding agreement.

86.     Both the offer and acceptance contain the same material terms and both Parties understood that the terms contained in TTB's offer were in exchange for TTB's withdrawing its pursuit of permit revocation.

87.    The TTB's settlement offer contained adequate consideration for both parties:  Azuma agreed to a 21-day suspension in lieu of possible revocation of its permit and to comply with the ten conditions proposed by TTB, and TTB agreed to withdraw its pursuit of permit revocation in lieu of the lesser penalty of a suspension and Azuma's compliance with the ten proposed conditions.

88.    The Parties' conduct demonstrates that both Parties intended the Settlement Agreement to be valid and binding.

89.    Azuma began performing under the Settlement Agreement immediately upon accepting the TTB's settlement offer, agreeing to all requests for agreement and providing documentation as requested.

90.    TTB also began performing its own obligations under the terms of the Settlement Agreement, including conducting an inspection of Azuma's facility on August 7, 2018.

91.    On this basis, there is a valid and binding Settlement Agreement.

92.    Plaintiff is entitled to a declaratory judgment that the Settlement Agreement is a valid and binding contract between the Parties.

93.    Plaintiff is entitled to judgment as a matter of law.

## FOURTH CAUSE OF ACTION

(Injunctive Relief)

94.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 93 of this Complaint.

95.    TTB's disavowal of the Settlement Agreement and failure to comply with the terms of the Settlement Agreement has caused or will cause Azuma irreparable injury.

96.     Beginning with its acceptance of the TTB's offer, Azuma underwent substantial effort and expended substantial resources in performance of, and in reliance on, the Settlement Agreement.

97.     As the Settlement Agreement required Azuma to begin manufacturing cigarettes by a certain date, Azuma began preparing its machines for operation.  In June of 2018, within one month of the Settlement Agreement, Azuma hired an expert machinist specializing in tobacco manufacturing machines, Larry Prince, to assemble and calibrate its machines.  Mr. Prince has flown from Virginia to Alturas, California as many as eight times to repair and calibrate the machines in order to make them operational.

98.     Acting in good faith and in reliance of the Settlement Agreement, Azuma finalized the purchase of a collection of approximately fifty cigarette brand-styles from Westgate Distribution, informing the United States Food and Drug Administration (FDA) of the change in ownership and renewing the trademarks acquired from Westgate Distribution.

99.     The federal government has a well-established federal policy of promoting tribal self-sufficiency and economic development.  Like many Indian tribes, Alturas Indian Rancheria relies upon the economic development of its wholly-owned corporations, such as Azuma.

100.    TTB's failure to comply with the Settlement Agreement, particularly after inducing Azuma to expend substantial resources in reliance of the Agreement, undermines the key goal of the federal government to render Indian tribes more self-sufficient and better positioned to fund their own sovereign functions, rather than relying on federal funding.

101.    Remedies available at law, such as monetary damages, are inadequate to compensate for Azuma's irreparable injury.

**COMPLAINT**
*AZUMA CORP. V. U.S. DEP'T OF THE TREASURY ALCOHOL AND TOBACCO AND TRADE BUREAU*

102.    Considering the balance of hardships between Azuma and TTB, a remedy in equity is warranted.

103.    TTB is not faced with hardship by respecting a settlement agreement that its own regulations required it enter into and that it itself proposed.

104.    The public interest would not be disserved by a permanent injunction.

105.    An injunction in this case would save court and federal government resources in that the Parties would not have to needlessly adjudicate the OTSC before the ALJ.

106.    The public has an interest in the government honoring its agreements and being able to rely upon contracts it enters into with government agencies.

107.    Pursuant to TTB regulations, if a settlement agreement is in effect, OTSC proceedings must be dismissed.

108.    Azuma seeks a permanent injunction requiring TTB to comply with the Settlement Agreement and dismiss the Order to Show Cause proceedings.

## **FIFTH CAUSE OF ACTION**

(Mandamus Action to Compel TTB to Perform a Legal Duty)

109.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 108 of this Complaint.

110.    Under 28 U.S.C. § 1361, "[t]he district court shall have jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff."

111.    The Settlement Agreement is a valid and binding contract between the Parties.

112.    Azuma is in compliance with the Settlement Agreement and therefore has a clear right to have TTB abide by the Settlement Agreement.

113.    TTB has a mandatory, ministerial, non-discretionary duty to comply with the Settlement Agreement.

114.    TTB is willfully failing to abide by the provisions of the Settlement Agreement. Instead, the TTB is abdicating its affirmative duty to comply with the terms of the Settlement Agreement and dismiss the OTSC proceedings.

115.    No remedy other than TTB's abidance by the Settlement Agreement is available to Azuma.

116.    Azuma has no other adequate remedy to compel the TTB to perform its duty.

117.    TTB's failure to comply with the Settlement Agreement has caused, and is causing, Azuma ongoing and substantial harm.

## SIXTH CAUSE OF ACTION

### (Breach of Contract)

118.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 117 of this Complaint.

119.    In the exchange of e-mail correspondence on May 11, 2018 and May 25, 2018, TTB offered, and Azuma agreed to, material terms of a complete settlement of all counts raised on the OTSC.

120.    On May 11, 2018, Ronald N. Hancock—TTB's then-Acting Assistant Administrator, Field Operations and current Deputy Assistant Administrator, Field Operations—extended to Azuma, through TTB Attorney Daniel Peralta, "the following settlement proposal in lieu of a revocation action."  TTB Attorney Peralta's email stated that the settlement offer was made pursuant to Rule 403 of the Federal Rules of Evidence.  TTB's May 11, 2018 email indicated the settlement offer was open until June 1, 2018.

121.    The TTB's email dated May 11, 2018 explicitly stated that it constituted a "settlement offer" and a "settlement proposal."  The TTB's May 11 email expressly held the offer open until June 1, 2018, after which the offer would be withdrawn.

122.    Because the TTB itself provided the proposal of settlement, it necessarily considered the terms of the Settlement Agreement satisfactory.

123.    On May 25, 2018, Azuma formally accepted TTB's offer in an email transmittal of a letter, stating Azuma "accepts the settlement offer made" by the TTB, and began performance under the agreement.  After receiving Azuma's acceptance letter, TTB did not assert that Azuma had misunderstood or misstated the fact that a settlement offer was made and accepted.

124.    The offer and acceptance on their face show the Parties' intent to be bound and constitute a valid and binding agreement.

125.    Both the offer and acceptance contain the same material terms, and both Parties understood that the terms contained in TTB's offer were in exchange for TTB's withdrawing its pursuit of the permit revocation.

126.    The TTB's settlement offer contained adequate consideration for both parties: Azuma agreed to a 21-day suspension in lieu of possible revocation of its permit and to comply with the ten conditions imposed by TTB, and TTB agreed to compromise its pursuit of permit revocation in lieu of the lesser penalty of a suspension, despite TTB's belief that it has a solid legal basis to continue pursuing a revocation case.

127.    The Parties' conduct following offer and acceptance demonstrates that both parties intended the Settlement Agreement to be valid and binding.

128.    Azuma began performing under the Settlement Agreement immediately upon accepting the TTB's settlement offer, agreeing to all requests for agreement and providing documentation as requested.

129.    TTB also began performing its own obligations under the terms of the Settlement Agreement, including conducting an inspection of Azuma's facility on August 7, 2018.

130.    On this basis, there is a binding and enforceable contract—the Settlement Agreement—between the Parties.

131.    TTB had a duty arising out of the Settlement Agreement to abide by the terms of the Settlement Agreement and dismiss the OTSC proceedings.

132.    Azuma is in compliance with the Settlement Agreement and therefore has a clear right to have TTB abide by the Settlement Agreement.

133.    On August 14, 2018, TTB's attorney telephoned counsel for Azuma and informed him that TTB was changing course and would no longer comply with the Settlement Agreement, in particular, TTB's obligation to withdraw the OTSC.  TTB's counsel emailed Azuma that despite Azuma's intention to enforce the Settlement Agreement, it would "move forward with revocation proceedings."

134.    TTB breached the Settlement Agreement, in particular its duty to withdraw the OTSC.

135.    TTB's failure to comply with the Settlement Agreement has caused, and is causing, Azuma ongoing and substantial harm.

136.    Beginning with its acceptance of TTB's offer, Azuma underwent substantial effort and expended substantial resources in performance of, and in reliance on, the Settlement Agreement.

///

///

**COMPLAINT**
*AZUMA CORP. V. U.S. DEP'T OF THE TREASURY ALCOHOL AND TOBACCO AND TRADE BUREAU*

## VI.   PRAYER FOR RELIEF

WHEREFORE, and based on the foregoing, Plaintiff respectfully requests that the Court grant the following relief:

a.   A declaration that the TTB's disavowal of the Settlement Agreement and refusal to abide by the Settlement Agreement is arbitrary, capricious, and an abuse of discretion;

b.   A declaration that the TTB's decision not to comply with the Settlement Agreement and dismiss the OTSC proceedings is an agency action unlawfully withheld or unreasonably delayed;

c.   A declaration that the Settlement Agreement is valid and binding as to the Parties;

d.   A permanent injunction requiring that the TTB comply with the terms of the Settlement Agreement and thus dismiss the Order to Show Cause proceedings before the ALJ;

e.   A writ of mandamus compelling the TTB to fulfill its obligations to Azuma under the Settlement Agreement;

f.   A declaration that TTB breached the Settlement Agreement;

g.   Attorneys' fees and costs; and

h.   Such other relief as the Court deems just and equitable.

///

///

///

///

///

**COMPLAINT**

*AZUMA CORP. v. U.S. DEP'T OF THE TREASURY ALCOHOL AND TOBACCO AND TRADE BUREAU*

Respectfully submitted this 24th day of July, 2019,


By: /s/ John M. Peebles
John M. Peebles (DC Bar No. NE15730)
jpeebles@ndnlaw.com
F. John Nyhan (DC Bar No. 467082)
jnyhan@ndnlaw.com
James Qaqundah (DC Bar No. NY0137)
jqaqundah@ndnlaw.com
Peter D. Lepsch (DC Bar No. 495548)
plepsch@ndnlaw.com
Brandt Benjamin Fenner (DC Bar No. 1011266)
bfenner@ndnlaw.com

FREDERICKS PEEBLES & PATTERSON LLP
2020 L Street, Suite 250
Sacramento, CA 95811
(916) 441-2700

*Attorneys for Plaintiff*
*Azuma Corporation*

**COMPLAINT**
*Azuma Corp. v. U.S. Dep't of the Treasury Alcohol and Tobacco and Trade Bureau*